# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

PIZZA HAZEL, et al.,                      )
                                          )
                  Plaintiffs,             )
                                          )
                                          )     Civil Action No. 24-CV-12505-AK
v.                                        )
                                          )
AMERICAN EXPRESS COMPANY et al.,  )
                                          )
                  Defendants.             )
_____)

## MEMORANDUM AND ORDER ADOPTING
## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

**ANGEL KELLEY, D.J.**

In this putative class action, Plaintiff-merchants ("Plaintiffs") seek damages and injunctive relief against Defendants American Express Company and American Express Travel Related Services Co., Inc. (together, "Amex") on behalf of approximately eight million merchants in the United States who accept Amex-branded cards under Amex's Opt Blue® program, subject to the April 2024 version of the American Express Merchant Operating Guide ("MOG"). [Dkt. 1]. Amex has moved to compel arbitration (the "Motion"). [Dkt. 29]. The Motion was referred to Magistrate Judge Boal. [Dkt. 38]. Magistrate Judge Boal issued a Report and Recommendation ("R&R"), recommending that this Court deny Amex's Motion. [Dkt. 56]. In doing so, Magistrate Judge Boal accepted Plaintiffs' illusory argument, but rejected the remaining arguments. Both parties filed timely objections. [Dkts. 61; 62].

After conducting a de novo review of the portions of the Report and Recommendation [Dkt. 56] to which objections were made, the Court overrules all objections. The Court **ADOPTS** the R&R in full, and Amex's Motion to Compel Arbitration [Dkt. 29] is **DENIED**.

## I.    BACKGROUND

The following facts are set forth in the R&R and not disputed by the parties:

> Each time a customer uses a credit card, the merchant pays a swipe fee, also known as a "merchant discount fee." Complaint at ¶ 31. For most U.S. merchants, the average merchant discount fee on credit card transactions is more than 3% of the sale price. Id. With a 3% merchant discount fee, if a customer buys an item for $100, the merchant will receive $97 in its bank account. Id. The $3 discount fee is split among the network, the card issuer, and the "merchant acquirer" or processor that services the merchant account. Id.
>
> Plaintiffs Pizza Hazel, Inc., Nunan Florist and Greenhouses, Inc., and Skin Rejuvenation Center and Spa, Inc. are small merchants who accept all major payment cards including American Express. Id. at ¶¶ 26-28. Plaintiffs contract with a third-party card processor, known as an "acquirer" or "payment facilitator," which in turn contracts with Amex. See id. at ¶¶ 33, 40. Many merchants that accept Amex through third parties do so as part of Amex's "OptBlue" program, and merchants that accept through these third parties are known as "OptBlue merchants." See id. Plaintiffs are OptBlue participants. See id. at ¶ 40.
>
> As OptBlue merchants, Plaintiffs are subject to Amex's Merchant Operating Guide ("MOG"). Id. Under the MOG, OptBlue merchants, including Plaintiffs, may not offer a discount to customers for using a cheaper payment product, may not assess a small fee (or surcharge) for using Amex rather than other credit cards, or ask customers to use a cheaper credit card. See id. at ¶ 41. While Visa and Mastercard have rescinded their anti-steering rules in response to litigation, a merchant that accepts all credit cards cannot engage in steering due to Amex's rules. See id. at ¶¶ 2-3. Amex's anti-steering rules, therefore, protect the entire payment card industry from having to engage in price competition on merchant swipe fees. Id. at ¶ 3.

[Dkt. 56 at 2-3].

The R&R also highlighted several pertinent sections of the MOG. Importantly, the MOG permits both scheduled and unscheduled changes to its sections. [Dkt. 30-2 at 13]. Scheduled changes are published in April and October. [Id.]. Unscheduled changes may be made at any time and take effect ten days after being posted online, unless another effective date is specified in the notice. [Id.]. On August 18, 2023, Amex published an update to the MOG that included changes to the arbitration agreement. [Dkt. 56 at 14]. The changes were "effective immediately." [Id.].

The MOG also contains an arbitration agreement (the "Agreement"), which includes provisions that are central to the parties' objections, including allocating arbitration fees, restricting appeals, and limiting discovery.  [Dkt. 30-2 at 122-126].

## II.    LEGAL STANDARD

### A.  Judicial Review

Under the Federal Rules of Civil Procedure, "While a magistrate judge may decide a non-dispositive motion, see Fed R. Civ. P. 72(a), she may only make a recommended disposition of a dispositive motion, see Fed. R. Civ. P. 72(b)."  Patton v. Johnson, 915 F.3d 827, 832 (1st Cir. 2019).  When a magistrate judge considers a dispositive motion and files a report and recommendation, the district judge must, after timely objections are lodged, engage in de novo review.  PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010).  A district court may "set aside" the magistrate judge's order of a non-dispositive motion only "if it is clearly erroneous or is contrary to law."  Id. (citing Fed. R. Civ. P. 72(a)).  This "clearly erroneous" standard requires the court to "accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [it] form[s] a strong, unyielding belief that a mistake has been made."  Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (citation modified).  Pure questions of law are reviewed de novo.  PowerShare, 597 F.3d at 15.

The First Circuit has held that a motion to compel arbitration is a non-dispositive motion. Patton, 915 F.3d at 832 (citing Powershare, 597 F.3d at 14).  Accordingly, the Magistrate Judge should have issued an order rather than a report and recommendation, and the proper vehicle for review would have been an appeal, not an objection.  See id.  Nonetheless, because the issues presented here are purely legal, any procedural misstep is harmless.  Id. at 833.  The Court therefore treats the parties' objections [Dkts. 61; 62] as appeals from the Magistrate Judge's

order, but continues to use "R&R" and "objections" to be consistent with the language used by the parties and the Magistrate Judge.

**B.  Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).  Under the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  To compel arbitration, the moving party must establish "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Intergen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).  In determining whether an agreement to arbitrate exists, courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

The summary judgment standard should be used when adjudicating a motion to compel arbitration. Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 176 (1st Cir. 2021). Under this standard, the court views the record "in the light most favorable to the non-mov[ing] [party] and draw[s] all reasonable inferences in [its] favor." Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 92 (1st Cir. 2021) (citing Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013)).  The court may consider the allegations in the complaint and evidence submitted by the parties.  See McKenzie v. Brannan, 19 F.4th 8, 10 n.1 (1st Cir. 2021) (citing Toddle Inn Franchising, LLC, v. KPJ Assocs., LLC, 8 F.4th 56, 59 n.1 (1st Cir. 2021)).

III.    **DISCUSSION**

Plaintiffs agree with the R&R's ultimate conclusion that Amex's Motion should be denied, but they raise four objections "out of an abundance of caution." [Dkt. 61 at 1]. Amex objects to the R&R, challenging the finding that the agreement is illusory. The Court addresses each party's objections in turn.

A.    **Amex's Objection**

Amex objects to the R&R's conclusion that the Agreement is illusory. In doing so, Amex provides three distinct grounds for this Court to sustain their objection. First, Amex argues that the R&R misconstrued "effective immediately" as providing no notice. [Dkt. 62 at 10]. Second, Amex argues the R&R overlooked express and implied contractual terms that bar retroactive changes. Lastly, Amex argues the R&R failed to consider severance of the unilateral modification provision. The Court addresses each.

1.    **"Effective Immediately"**

Amex first objects to the "conclusion that the MOG is illusory because it allows for unilateral changes 'without fair notice.'" [Dkt. 62 at 10 (quoting Dkt. 56 at 14)]. Amex contends that "effective immediately" does not equate to no notice, and merchants receive adequate notice because they may reject changes "at any time" by ceasing to accept Amex cards. [Id. at 13]. Amex's position that "effective immediately" includes adequate notice falls short.

As the R&R notes, the parties dispute whether New York or Massachusetts law governs, but agree that the substantive analysis is the same under either. [See Dkts. 40 at 13 (stating that "the result would be the same under either Massachusetts or New York law"); 45 at 10 n.5 (stating Plaintiffs' preference for Massachusetts law is "immaterial" to the Court's result)]. The Court notes, however, that courts in this District "have found that contractual choice-of-law

clauses do not apply to a validity determination." Crean v. Morgan Stanley Smith Barney, LLC, 652 F. Supp. 3d 171, 179 (D. Mass. 2023) (citing Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 294 n.4 (D. Mass. 2014)) (collecting cases).  Thus, if not for the parties' apparent agreement, this Court would have solely applied Massachusetts law to determine if the Agreement is valid.  See Murray v. Grocery Delivery E-Servs. USA Inc., 460 F. Supp. 3d 93, 97 (D. Mass. 2020).

Under both Massachusetts and New York law, an arbitration agreement is illusory if one party can change it unilaterally without providing notice to the other party.  See Domenichetti v. Salter Sch., LLC, No. 12-11311-FDS, 2013 WL 1748402, at *6 (D. Mass. Apr. 19, 2013) (unilateral discretion to alter dispute resolution policy without notice renders agreement illusory and unenforceable); Bassett v. Elec. Arts, Inc., 93 F. Supp. 3d 95, 107 (E.D.N.Y. 2015) ("Thus, the analysis of whether a unilateral right to modify an arbitration agreement renders that agreement illusory and unenforceable turns on reasonableness and fair notice.").  Thus, under both Massachusetts and New York law, the dispositive question is whether Amex's August 18, 2023 update to the merchants provided reasonable notice.  It did not.

"Effective immediately" means precisely that—changes take effect immediately.  Amex attempts to obfuscate the plain meaning of "immediate" by contending that notice was provided "because merchants have an opportunity to reject those changes at any time by discontinuing their acceptance of Amex."  [Dkt. 62 at 13].  However, this argument was squarely foreclosed by the First Circuit: "Similarly unconvincing is the [defendant's] argument that the contract cannot be found to be illusory because [p]laintiffs can terminate the agreement at any time."  Nat'l Fed'n of the Blind v. Container Store, Inc., 904 F.3d 70, 87 (1st Cir. 2018).  As the First Circuit has indicated, the relevant inquiry is whether the drafter "unilaterally retained the right to alter the terms of the contract 'at any time.'" McNamara v. S.I. Logistics, Inc., No. 17-CV-12523-

6

ADB, 2018 WL 6573125, at *3 (D. Mass. Dec. 13, 2018) (quoting Nat'l Fed'n of the Blind, 904 F.3d at 87).

Amex's reliance on cases involving opt-out windows is misplaced.  In each, the non-drafting party had a meaningful opportunity to reject the changes before they took effect.  See Bassett, 93 F. Supp. 3d at 107 (agreement not illusory since plaintiff had a thirty-day opt-out window); Vaiano v. United Nat'l Corp., 733 F. Supp. 3d 32, 38 (D. Mass. 2024) (contract not illusory since it contained a forty-five-day opt-out window); Byrne v. Charter Commc'ns, Inc., 581 F. Supp. 3d 409, 418 (D. Conn. 2022) (agreement not illusory since it mandated ability to accept or reject changes); Brafton Inc. v. Warranty, No. 1984-CV-0091, 2022 WL 2168470, at *3 (Mass. Super. Ct. Jan. 5, 2022) (contract not illusory since it gives party thirty-days' notice of any modifications).  The hallmark of these cases is the prospective nature of the changes.  The Agreement here provides no similar opt-out window.

Other cases cited by Amex are irrelevant.  In Gonzalez v. v. Cheesecake Factory Restaurants, Inc., the agreement required notification of all material changes, and the court merely noted that unilateral changes to an arbitration agreement are not per se unenforceable because offending provisions may be severed.  No. 21-CV-5017 (PKC) (SIL), 2024 WL 989881, at *5 (E.D.N.Y. Mar. 6, 2024); Decl. Barbara Lewis Attach. Ex. A-C at 18, Gonzalez, 2024 WL 989881 (No. 21-CV-5017 (PKC) (SIL)), Dkt. No. 18-2.  Amex also cites to Fawcett v. Citizens Bank, N.A., which is unilluminating to this Court's analysis.  297 F. Supp. 3d 213 (D. Mass. 2018).  In Fawcett, the court outlined the legal framework of an illusory defense but deferred ruling, pending supplemental briefing on whether notice was provided.  Id. at 220-21 ("Because it is unclear to the [c]ourt whether Ms. Fawcett received notice of the amendment to the PDAA

adding the Arbitration Agreement, I cannot make a definitive ruling on Citizens' motion to compel arbitration."). Neither case supports Amex's position.

Additionally, Amex's "take-it-or-leave-it" stance is amplified by Amex's main retort that the "merchants have an opportunity to reject [the] changes at any time by discontinuing their acceptance of Amex" has no home in the MOG. [Dkt. 62 at 13]. Amex has not pointed to—and the Court is unaware of—any provision that permits the merchants to terminate the Agreement or reject the changes. On the contrary, the MOG states: "You agree to accept all such changes (and further to abide by the changed provisions of the *Merchant Operating Guide*) except where Applicable Law takes precedence." [Dkt. 30-2 at 13 (emphasis in original)]. No provision grants merchants the right to reject changes or terminate the Agreement in response to unilateral modifications. Even if such a right existed, the MOG provides that the arbitration agreement "survives termination of the Agreement." [Dkt. 30-2 at 125]. Thus, even if the merchants could terminate the Agreement "at any time" as Amex contends, the merchants would still be bound by the Agreement that included the unilateral changes the merchants oppose. Delaying notice until after changes take effect defeats the very purpose of notice and is functionally equivalent to providing none. As a federal court in New York applying Massachusetts law summarized, "if the party seeking to enforce the arbitration provision retains the unilateral discretion to alter its terms, without notice, the agreement to arbitrate is illusory and unenforceable." Flores v. NFL, 658 F. Supp. 3d 198, 215 (S.D.N.Y. 2023) (citation modified), aff'd sub nom., Flores v. N.Y. Football Giants, Inc, No. 23-1185-CV, 2025 WL 2349199 (2d Cir. Aug. 14, 2025).

So too fails Amex's ratification argument. Amex argues that Plaintiffs have ratified the Agreement by continuing to accept Amex cards from customers. However, this argument was not raised before the Magistrate Judge and is therefore waived. See Borden v. Sec'y of Health &

Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (affirming district court conclusion that appellant had waived issue by failing to raise it before magistrate judge).  Moreover, this Court is unconvinced that mere continued acceptance of Amex cards constitutes ratification of unilateral modifications.  See Nat'l Fed'n of the Blind v. Container Store, Inc., No. 15-12984-NMG, 2016 WL 4027711, at *2 (D. Mass. July 27, 2016) (explaining that mere participation is not enough to ratify an agreement), aff'd, 904 F.3d 70.

### 2.    Retroactive Changes

Next, Amex objects to the conclusion that the Agreement is illusory because it permits retroactive changes.  Amex relies on Section 13.1(c)(i) and the implied covenant of good faith and fair dealing to argue that retroactive modifications are barred.  This argument fares no better.

Section 13.1(c)(i) provides: "Claims will be resolved pursuant to this Arbitration provision and the selected organization's rules *in effect when the Claim is filed*, except where those rules conflict with the Agreement (in which case the Agreement shall govern)."  [Dkt. 30-2 at 123 (emphasis added)].  Another provision states: "Before you or we file a lawsuit or initiate a mediation or arbitration regarding a Claim, you and we agree to send a written notice *(Claim notice)* to each party against whom the Claim is asserted."  [Id. at 122 (emphasis in original)]. Under this framework, a merchant can send a written notice initiating the arbitration process yet be subject to a different agreement if Amex amends the terms before the formal filing of the claim.  That is precisely what happened here: after Plaintiffs' counsel emailed Amex notice of intent to file [Dkt. 45-4], Amex issued its August 18, 2023 update.  Amex argues that such notice could "hamstring a company's ability to change an arbitration agreement simply by suggesting that they *may* file an arbitration at some unspecified point in the future."  [Dkt. 45 at 11 (emphasis in original)].  The Court is not persuaded this is true.  Plaintiffs had no reason to

anticipate that Amex would alter the arbitration terms, adversely to merchants, within days of Amex receiving notice. Amex further contends that Plaintiffs sought to "leverage the threat of the expense of arbitrating thousands of bogus claims to extract a quick settlement without ever having to pay filing fees." [Dkt. 62 at 15]. This is a frivolous argument and deserves short shrift. Section 13.1(a), drafted by Amex, requires such notice precisely to allow the parties "an opportunity to resolve the Claim informally or through mediation." [Dkt. 30-2 at 122]. The "quick settlement" Amex decries is in fact a contractual feature it imposed.

Amex's conduct here is the very scenario the First Circuit warned against: "The crux of this issue is whether the [defendant] has the power to make changes to its arbitration policy that have retroactive effect, meaning changes to the policy that would strip the right of arbitration from a party who has already attempted to invoke it." Nat'l Fed'n of the Blind, 904 F.3d at 86. By altering the rules after learning of numerous pending claims, Amex engaged in a textbook example of illusoriness.

Amex's good faith and fair ruling argument is also waived. Like its ratification theory, it was not presented to the Magistrate Judge. See Borden, 836 F.2d at 6. Amex's suggestion that it may raise this argument now because Plaintiffs never alleged retroactive change is incorrect. [Dkt. 62 at 16 n.5]. Plaintiffs expressly argued that "Amex did not make an actual binding promise to arbitrate if it can change the rules of the game even after the game has begun . . . Amex changed the terms of its arbitration provision after the merchants attempted to invoke it." [Dkt. 40 at 14 (emphasis omitted)]. This is, in substance, a retroactivity argument. Having been on notice, Amex cannot now introduce a new defense.

There is one loose end. Amex contends that "what occurred with Plaintiffs' counsel in 2023 is not at issue here because this lawsuit challenges the April 2024 MOG." [Dkt. 62 at 15].

This argument can be dispatched with ease. The Supreme Court has distinguished between two types of challenges to arbitration agreements: (1) challenges to the validity of an agreement, and (2) challenges to the formation of the contract as a whole. Buckeye, 546 U.S. at 444 n.1 ("The issue of the contract's validity is different from the issue [of] whether any agreement . . . was ever concluded."). In bringing forward an "illusory" argument, Plaintiffs are invoking a formation challenge. In other words, they are arguing that no enforceable agreement was ever formed. See Nat'l Fed'n of the Blind, 904 F.3d at 81. Because the Court's inquiry is whether an agreement was formed, the specific operative version of the MOG is immaterial to that threshold question.

### 3.    Severance of the Unilateral Modification Provision

Lastly, Amex objects to the R&R's failure to consider severance of the unilateral modification clause. The Agreement contains a severability clause stating "[i]f any portion of this Chapter 13, except as otherwise provided in the Limitations on Arbitration subsection, is deemed invalid or unenforceable, it does not invalidate the remaining portions of this Section 13.1, the Agreement, or any predecessor agreement you may have had with us, each of which is enforceable regardless of such invalidity." [Dkt. 30-2 at 125-26]. However, as caselaw has made clear, severance cannot salvage an agreement that was never formed. See Nat'l Fed'n of the Blind, 2016 WL 4027711, at *8 (holding that doctrine of severability does not apply to contracts never formed).

As the First Circuit explained, severing provisions in an illusory agreement would be an "absurd process" because the court would be "reviving a contract [that] was never formed for its lack of consideration, omitting the change-in-term clause that was fatal to the contract's proper

formation, to therefore conclude a contract was formed." Nat'l Fed'n of the Blind, 904 F.3d at

87. The defect is not a discrete provision but the absence of mutuality. As another court stated:

> The modification provision is not collateral to the main purpose of the Policy, but
> rather creates an imbalance of mutuality between the employer and the employee.
> This imbalance renders the agreement's entire purpose—to impose arbitration—an
> illusory promise. Severance therefore is not a cure. The only remedy is reformation
> of the contract, but the Court is without authority to compel reformation to change
> an unlawful provision. Id. at 125, 99 Cal.Rptr.2d 745, 6 P.3d 669. Because the
> Court is not authorized to reform the agreement, the Court must instead find the
> entire Policy void.

Moua v. Optum Servs., Inc., 320 F. Supp. 3d 1109, 1114–15 (C.D. Cal. 2018).

Accordingly, severability cannot rescue an illusory agreement. The Court adopts the

Magistrate Judge's recommendation that the Agreement is illusory and unenforceable. Amex's

objections are overruled.

**B.    Plaintiffs' Objections**

Plaintiffs raise four objections "out of an abundance of caution." [Dkt. 61 at 1]. First,

they contend that the R&R erred in concluding that the arbitration-specific fees do not violate the

effective vindication doctrine. Second, they challenge the conclusion that Amex's arbitration

provision does not violate the effective vindication doctrine by precluding attorney's fees and

limiting substantive equitable relief. Third, they dispute the conclusion on unconscionability.

Finally, they object to the conclusion that the arbitration agreement is not "replete" with

unenforceable terms. The Court addresses each in turn.

**1.    The Effective Vindication Doctrine**

As the R&R explained, "the effective vindication doctrine is a judge-made exception to

the FAA that invalidates, on public policy grounds, arbitration agreements that operate as a

prospective waiver of a party's right to pursue statutory remedies." [Dkt. 56 at 9] (citation

modified). Plaintiffs advance three theories to support their effective vindication argument: (1)

the Agreement imposes high administrative fees that outweigh what any merchant can recover;

(2) the Agreement prohibits recovery of attorney's fees otherwise available under the antitrust

laws; and (3) the Agreement limits substantive injunctive relief otherwise available under those

laws.  The Court agrees with the R&R's ultimate conclusion that the doctrine does not bar

enforcement here, but supplements the reasoning to address Plaintiffs' various arguments.

Accordingly, Plaintiffs' objections on this ground are overruled.

### a.  Arbitration Fees

Plaintiffs first object to the conclusion that any challenge based on prohibitive arbitral

fees is premature.  They argue that the Agreement "precludes the merchants from recovering

such costs" on its face.  [Dkt. 61 at 7].  The Court disagrees.

The effective vindication doctrine may apply where "filing and administrative fees

attached to arbitration . . . are so high as to make access to the forum impracticable."  Am.

Express Co. v. Italian Colors Rest., 570 U.S. 228, 236 (2013).  Further, Italian Colors held that

"the fact that it is not worth the expense involved in *proving* a statutory remedy does not

constitute the elimination of the *right to pursue* that remedy."  570 U.S. at 236 (emphasis in

original).  Courts have understood this to include costs pertaining to expert witnesses.  See, e.g.,

Sutherland v. Ernst & Young LLP, 726 F.3d 290, 298 (2d Cir. 2013) (holding that effective

vindication doctrine cannot be used in circumstances where cost of expert witnesses, along with

other costs, exceeds any potential recovery); Frankel v. Citicorp Ins. Servs., Inc., No. 11-CV-

2293 (NGG) (RER), 2014 WL 10518555, at *7 (E.D.N.Y. Aug. 12, 2014), report and

recommendation adopted, No. 11-CV-2293 NGG RER, 2015 WL 6021534 (E.D.N.Y. Oct. 14,

2015); CMH Homes, Inc. v. Sexton, 441 F. Supp. 3d 1202 (D.N.M. 2020); In re Sprint Premium

Data Plan Mktg. & Sales Pracs. Litig., No. 11-2855 SDW, 2014 WL 202117, at *4 (D.N.J. Jan.

15, 2014).  Thus, the relevant inquiry is whether the fees make it impracticable for the merchants to pursue their antitrust claims.

At least two circuits have adopted a per se approach and reject clauses that require claimants to pay arbitrator's fees to vindicate statutory rights.  See Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1484 (D.C. Cir. 1997) ("[I]t would undermine Congress's intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court."); Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1062 (11th Cir. 1998) (holding that fee-shifting provisions in arbitration agreements to be a "legitimate basis" to invalidate an agreement).  Most circuits, however, have declined to adopt this per se approach and instead employ a case-by-case analysis.  See Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001) ("We believe that the appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."); see also Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 711-12 (5th Cir. 2002); Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 557 (7th Cir. 2003) (same).  This individualized approach originates in Green Tree Fin. Corp.-Alabama v. Randolph, which placed the burden on the party opposing arbitration to show the likelihood of incurring such high costs.  531 U.S. 79, 92 (2000).

The Sixth Circuit has criticized this individualized approach as "ask[ing] too much at this initial stage" and for having a potentially "chilling effect" on potential litigants.  Morrison v. Cir.

City Stores, Inc., 317 F.3d 646, 660-61 (6th Cir. 2003).  Similar concerns were discussed in

Justice Kagan's dissent in Italian Colors, which described the majority's rule as forcing litigants

to "[s]pend way, way, way more money than your claim is worth, or relinquish your Sherman

Act rights."  570 U.S. at 246.

So what does this mean for the Plaintiffs here?  This Court is guided by binding

precedent on this issue.  The First Circuit has not adopted the per se approach.  See Biller v. S-H

OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 518 (1st Cir. 2020).  Instead, the First Circuit

has adopted a "wait-and-see" approach, holding that challenges to arbitration costs and

attorney's fees are to be addressed by the arbitrator in the first instance and, if necessary,

reviewed at the end of arbitration.  See Thompson v. Irwin Home Equity Corp., 300 F.3d 88, 91-

92 (1st Cir. 2002); Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 15-16

(1st Cir. 1999).  This approach is reinforced by the Agreement itself, which provides that "[t]he

arbitrator has the power and authority to award any relief that would have been available in

court, including equitable relief."  [Dkt. 30-2 at 123].  Plaintiffs may therefore seek recovery of

arbitration and attorney's fees at the conclusion of the arbitration proceedings, and if dissatisfied

with the arbitrator's determination, they could "proceed to challenge the award in federal court."

Thompson, 300 F.3d at 92.  On this record, any challenge based on prohibitive fees is premature.

### b.  Attorney's Fees

Plaintiffs next object to the conclusion that the arbitrator has authority to award

attorney's fees.  They contend that the Agreement precludes such fees, thereby violating the

effective vindication doctrine by eliminating statutory attorney's fees under the Clayton Act.

The text of the Agreement does not support this argument

Section 13.1(c)(ix) provides: "You will be responsible for paying your legal fees (*except where otherwise provided in the Agreement*)." [Dkt. 30-2 at 125 (emphasis added)]. However, Section 13.1(c)(iv) states: "The arbitrator has the power and authority to award any relief that would have been available in court, including equitable relief." [Dkt. 30-2 at 123]. The First Circuit has stated, "[i]n the absence of such a direct conflict, the inquiry ends." Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc., 680 F.3d 118, 122 (1st Cir. 2012). Moreover, the Supreme Court has instructed that potential conflicts of this nature are generally abstract and the proper course is to compel arbitration and allow the arbitrator to construe the provisions in the first instance. PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 407 (2003). Even so, here, the Court finds there is no conflict. Section 13.1(c)(iv) plainly authorizes the arbitrator to award attorney's fees available under the Clayton Act, which is an award a court is authorized to grant. See Home Placement Serv., Inc. v. Providence J. Co., 819 F.2d 1199, 1209-10 (1st Cir. 1987) ("In all successful antitrust cases, the award of reasonable attorney's fees as part of costs is mandatory in order to encourage private prosecution of antitrust violations by insulating plaintiffs' treble damage recoveries from the expense of legal fees.").

Plaintiffs' reliance on Kristian v. Comcast Corp. cannot save the day. 446 F.3d 25 (1st Cir. 2006). The arbitration agreement in Kristian imposed an absolute bar on recovery of attorney's fees and costs. Id. at 52. The First Circuit held that this absolute bar on attorney's fees and costs was unenforceable because it directly conflicted with the federal antitrust laws. Id. at 52-53. The instant case is distinguishable for several reasons.

As Amex points out, the agreement in Kristian did not have a clause granting the arbitrator authority to award any relief that would be available in court. This is unlike the Agreement in the instant case because Section 13.1(c)(iv) grants the arbitrator such authority.

This provision includes attorney's fees available under the federal antitrust laws.  The Clayton Act itself is "designed to remedy economic injury by providing for the recovery" for both attorney's costs and arbitral costs.  <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.</u>, 483 U.S. 143, 151 (1987).  Thus, there is no absolute bar on attorney's fees.  Additionally, the First Circuit found the provision barring recovery of treble damages invalid because it prevented the award of damages that is authorized under federal antitrust laws.  <u>Kristian</u>, 446 F.3d at 48.  There is no such waiver here.  Finally, <u>Kristian</u> did not invalidate the arbitration agreement on effective vindication grounds; it severed the offending provisions and enforced the remaining provisions, concluding that "the arbitral forum remains viable."  <u>Id.</u> at 53.

The Court sees no purpose to plod further into this objection.  Because Section 13.1(c)(iv) and Section 13.1(c)(ix) are not in conflict, this objection is overruled.

### c.   Market-Wide Injunctive Relief

Plaintiffs also object to the conclusion regarding market-wide injunctive relief.  The Court agrees with the R&R that the Agreement expressly allows for injunctive relief.  [<u>See</u> Dkt. 30-2 at 123 ("The arbitrator has the power and authority to award any relief that would have been available in court, including equitable relief (e.g., injunction, specific performance). . . .")].  Regarding market-wide relief, Plaintiffs object to the R&R because it was "based on the incorrect premise that class wide injunctive relief was not available at the time the Clayton Act was enacted."  [Dkt. 61 at 13 (citation modified)].  Plaintiffs nonetheless argue that they should be able to proceed as a nationwide class action to vindicate their rights under the antitrust laws.  This argument is foreclosed by several Supreme Court cases.  Plaintiffs attempt to muddle what the Supreme Court has made clear by arguing that the Supreme Court allowed waivers of class

17

actions for legal relief, not equitable relief.  Plaintiffs' attempt to distinguish this case from well-settled Supreme Court cases fails.

There is a line of Supreme Court precedent that has upheld the enforceability of class action waivers in arbitration agreements.  See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 352 (2011).  The last of these cases, Italian Colors, put to rest any debate about the enforceability of class action waivers.  There, the Supreme Court confirmed that, absent a contrary congressional command, courts must enforce such waivers under the FAA.  570 U.S. at 233.  The Court's inquiry is therefore whether such contrary congressional command exists.  Put differently, this Court asks whether Congress "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer, 500 U.S. at 26 (citation omitted).  To determine whether such a command exists, courts look to "the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes."  Id. (citation modified).  During this inquiry, courts are instructed to "ke[ep] in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  Id. (citation modified).  The burden is on the party opposing arbitration, here, Plaintiffs, to demonstrate that Congress intended to preclude a class action waiver in the Agreement.  See id.

Plaintiffs have failed to carry their burden.  They identify no statutory text, legislative history, or inherent conflict suggesting that Congress intended to preclude such a waiver.  See Mitsubishi Motors Corp., 473 U.S. at 628 ("We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history.").  As

Plaintiffs do not point to anything that supports such an inference, or even argue that such a contrary congressional command exists, the Court's inquiry could stop here.

To be sure, this conclusion is also supported by precedent.  Indeed, the antitrust laws make "no mention of class actions" because the antitrust laws "were enacted decades before the advent of Federal Rule of Civil Procedure 23."  Italian Colors, 570 U.S. at 234.  Accordingly, the class action waiver here does not override the FAA's mandate to enforce arbitration agreements. As the Supreme Court has stated, "[h]aving made the bargain to arbitrate, the part[ies] should be held to it."  Mitsubishi Motors Corp., 473 U.S. at 628.  In the absence of any "contrary congressional command," this objection is overruled.  Italian Colors, 570 U.S. at 233.

It is safe to say that, today, the effective vindication doctrine has been narrowed by so many limitations that its continued viability is uncertain.  In fact, a footnote of a Supreme Court dissent suggests that this doctrine will no longer apply in *any* case.  See DIRECTV, Inc. v. Imburgia, 577 U.S. 47, 68 (2015) (Ginsburg, J., dissenting) ) (citing Italian Colors, 570 U.S. at 240) ("Although the Court in *Italian Colors* did not expressly reject this 'effective vindication' principle, the Court's refusal to apply the principle in that case suggests that the principle will no longer apply in any case."(emphasis in original)).  Like other courts in this Circuit, this Court has reservations about the "wait and see" approach and its potential chilling effect on claimants.  See Fusco v. Plastic Surgery Ctr., P.A., No. 2:15-CV-460-DBH, 2016 WL 3077843, at *1 (D. Me. May 31, 2016); Curtis v. Contractor Mgmt. Servs., LLC, No. 1:15-CV-487-NT, 2018 WL 6071999, at *7 (D. Me. Nov. 20, 2018) (citation omitted).  But these reservations are not tantamount to law.  Thus, Plaintiffs' effective vindication arguments fail—for now.

### 2.  Unconscionability

Plaintiffs also object to the conclusions on unconscionability, asserting that the Agreement is both procedurally and substantively unconscionable under Massachusetts and New York law.  Under Massachusetts law, "[u]nconscionability must be determined on a case-by-case basis, with particular attention to whether the challenged provision could result in oppression and unfair surprise to the disadvantaged party."  Waters v. Min, Ltd., 587 N.E.2d 231, 233 (Mass. 1992).  To establish unconscionability under Massachusetts law, "a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)."  Machado v. System4 LLC, 28 N.E.3d 401, 414 (Mass. 2015) (citation omitted).  This is a conjunctive requirement.  See Bekele, 199 F. Supp. 3d at 303, aff'd, 918 F.3d 181 (1st Cir. 2019).  New York law generally also requires both substantive and procedural unconscionability for a contract to be deemed unenforceable.  Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) (citing Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988)).  Under New York law, procedural unconscionability concerns the formation of the contract, while substantive unconscionability concerns its terms.  Id. at 121-22 (citing State v. Wolowitz, 468 N.Y.S.2d 131 (N.Y. App. Div. 1983)).

Although the R&R and the parties suggested the unconscionability analysis is the same under both Massachusetts and New York, the Court notes a minor distinction.  Massachusetts requires both procedural and substantive unconscionability.  See Bekele, 199 F. Supp. 3d at 303.  However, New York recognizes exceptional cases in which a finding of substantive unconscionability alone may suffice.  See Ragone, 595 F.3d at 122 (citing Gillman, 534 N.E.2d

at 829).  Accordingly, the Court examines Plaintiffs' unconscionability arguments under both Massachusetts and New York law, mindful of exceptional cases under New York law.

### a.  Procedural Unconscionability

Plaintiffs maintain that the Agreement is a contract of adhesion.  Adhesion contracts are scrutinized for potential procedural unconscionability but they are not per se invalid.  Bekele, 199 F. Supp. 3d at 302 (citing McInnes v. LPL Fin., LLC, 994 N.E.2d 790, 798 (Mass. 2013)); Ragone, 595 F.3d at 122.  Plaintiffs do not challenge this established legal principle; rather, they submit that the Agreement also presents a clear instance of "unfair surprise," which in turn establishes procedural unconscionability.  Since the R&R did not examine this argument, this Court will do that now.

In Massachusetts, a contract may be procedurally unconscionable if it is the product of "unfair surprise." Zapatha v. Dairy Mart, Inc., 408 N.E.2d 1370, 1376 (Mass. 1980).  This is similar in New York: a contract may be procedurally unconscionable if "deceptive or high-pressured tactics were used." Gillman, 534 N.E.2d at 828.  The relevant inquiry focuses on the circumstances at the time the contract was executed and not the circumstances as they later developed.  See GGNSC Chestnut Hill LLC v. Schrader, No. 16-10525-DPW, 2018 WL 1582555, at *5 (D. Mass. Mar. 31, 2018), aff'd sub nom., GGNSC Admin. Servs., LLC v. Schrader, 958 F.3d 93 (1st Cir. 2020).  Courts in Massachusetts and New York consider whether the challenged terms of the agreement were obscure or hidden.  Saizhang Guan v. Uber Techs., Inc., 236 F. Supp. 3d 711, 732 (E.D.N.Y. 2017) (finding no "high pressure tactics" since terms were not "buried" or "hidden"); Sanders v. Forex Cap. Markets, LLC, No. 11-CV-0864 (CM), 2011 WL 5980202, at *6 (S.D.N.Y. Nov. 29, 2011) (finding no unconscionability since agreement was "clearly labeled" and "not cloaked in legalese or obscurity"); see, e.g., Bose

Corp. v. Ejaz, No. 11-10629-DJC, 2012 WL 4052861, at *4 (D. Mass. Sept. 13, 2012), aff'd, 732 F.3d 17 (1st Cir. 2013) (finding no "unfair surprise" where terms were not "obscurely worded" or "buried in fine print"); Mistry Prabhudas Manji Eng. Pvt. Ltd v. Raytheon Eng'rs & Constructors, Inc., 213 F. Supp. 2d 20, 27 (D. Mass. 2002) (finding no "unfair surprise" when "clauses were not hidden boilerplate"); Vaiano, 733 F. Supp. 3d at 42 (citing Bekele, 199 F. Supp. 3d at 301) (considering whether provisions were "bolded, capitalized, or separate in some way, and whether the provision is demarcated by a bolded or enlarged heading").

Plaintiffs' singular argument concerns Amex's unilateral changes to the Agreement. [Dkt. 61 at 16-17]. But those changes were not made at the time of execution, see Schrader, 2018 WL 1582555, at *5, and the relevant provisions were not obscure or hidden, see Bose Corp., 2012 WL 4052861, at *4. Because Plaintiffs have not shown "unfair surprise" at the time of contract formation, they have not established the agreement is procedurally unconscionable under Massachusetts or New York law. Accordingly, Plaintiffs' objection with regard to procedural unconscionability is overruled.

### b. Substantive Unconscionability

Because the Court found no procedural unconscionability under Massachusetts law, it need not reach the issue of whether the Agreement's provisions on arbitration fees, appeals, and discovery limitations are substantively unconscionable under Massachusetts law. See Bekele, 199 F. Supp. 3d at 303. The Court therefore considers Plaintiffs' substantive unconscionability arguments only under New York law.

In New York, an agreement "is substantively unconscionable if it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract." Isaacs v. OCE Bus. Servs.,

Inc., 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013).  In other words, courts in New York look to see if the agreement contains terms and provisions that are unreasonably favorable to one party.  See Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002); see also Chandler v. Int'l Bus. Machs. Corp., No. 21-CV-6319 (JGK), 2022 WL 2473340, at *7 (S.D.N.Y. July 6, 2022) (stating that arbitration agreements are not substantively unconscionable when provisions are not clearly "one sided"), aff'd, No. 22-1733, 2023 WL 4987407 (2d Cir. Aug. 4, 2023); Oestreicher v. Equifax Info. Servs., LLC, No. 23-CV-00239 (RER) (MMH), 2024 WL 1199902, at *7 (E.D.N.Y. Mar. 20, 2024) (same).  While New York generally requires both procedural and substantive unconscionability, in "exceptional cases" a finding of substantive unconscionability alone may suffice.  Ragone, 595 F.3d at 122.  The Court examines in turn the provisions on arbitration fees, appeals, and discovery limitations, and concludes that none rise to the level of an "exceptional case" warranting invalidation based solely on substantive unconscionability.

### 1. Arbitration Fees

Plaintiffs argue that the arbitration fees they face are so prohibitive as to render the Agreement substantively unenforceable.  This argument is essentially a repackaging of their effective vindication argument.  As explained above, and as the R&R found, any challenge based on prohibitive costs is premature and must await the conclusion of arbitration.  The Second Circuit has rejected per se invalidation of arbitration agreements based on speculative costs.  See Kai Peng v. Uber Techs., Inc., 237 F. Supp. 3d 36, 36 (E.D.N.Y. 2017) (holding no substantive unconscionability since "[p]laintiffs have not made a particularized showing of their inability to pay for arbitration"); see also Rahman v. Milos HY, Inc., 238 N.Y.S.3d 119 (N.Y. Sup. Ct. 2025) (same).  The "risk" of prohibitive costs, without more, "is too speculative to justify the invalidation of an arbitration agreement."  Green Tree, 531 U.S. at 91.  Since this argument is

foreclosed by the Supreme Court and the Second Circuit, it is not unconscionable under New York. Any concerns that the arbitration fees are prohibitive must await the conclusion of the arbitration proceedings. This objection is therefore overruled.

## 2. Appeals

Plaintiffs next challenge the Agreement's appeal provision, which states: "With respect to awards of $500,000 or more and/or where injunctive relief is ordered by the arbitrator, either party can initiate an appeal." [Dkt. 30-2 at 124]. Plaintiffs argue that the appeal provision ensures "that in practice small merchants like Pizza Hazel can *never* appeal an unfavorable decision, while Amex gets a *de novo* appeal in the vast majority of cases where it receives an adverse decision." [Dkt. 40 at 17 (emphasis in original)]. In other words, Amex would enjoy a de facto right to appeal in most cases it loses, while merchants would rarely have the same opportunity. The R&R rejected this argument on the ground that the "restrictions . . . apply to both sides" and there is no basis for the assumption "that every dispute subject to arbitration will be a claim by a merchant against Amex." [Dkt. 56 at 16].

But under New York law, "substantive unconscionability looks to the content of the contract and entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." Oestreicher, 2024 WL 1199902, at *7 (citation modified). When an agreement binds both parties equally, it cannot be unconscionable. See id. However, at times, an agreement may appear neutral on its face but benefit one party over the other. See Damato v. Time Warner Cable, Inc., No. 13-CV-994 (ARR) (RML), 2013 WL 3968765, at *9 (E.D.N.Y. July 31, 2013) (stating a provision that appears neutral but benefits one party in practice may be unconscionable); see also Lau v. Mercedes-Benz USA, LLC, No. CV 11-1940 MEJ, 2012 WL 370557, at *10 (N.D. Cal. Jan. 31,

2012) (examining an arbitration agreement's "practical effect" on defendant when examining an unconscionability defense).

New York courts have not squarely ruled on this issue. A case that is instructive, albeit in dicta, is Paduano v. Express Scripts, Inc., 55 F. Supp. 3d 400 (E.D.N.Y. 2014). In that case, the court could not "conceive of a more restrictive limitation" in an arbitration agreement that eliminated or severely limited rights to an appeal. Paduano, 55 F. Supp. 3d at 418. Ultimately, the court severed the unconscionable terms regarding discovery, but did not address the other restrictive terms, including the appeal provision. Id. at 422. The Second Circuit also addressed arbitration agreements that prevent any appeal of an arbitrator's decision. Ragone, 595 F.3d at 122. In Ragone, the Second Circuit held that nothing in the arbitration agreement "prevent[ed] the plaintiff from moving to vacate an arbitration award in federal court." Id. (citation omitted). However, both Paduano and Ragone are not entirely instructive since they involve the complete bar on appeals and not the one-sided appeal provision at issue in this case. Thus, this Court looks to other courts.

The Court finds the Ninth Circuit, which addressed this asymmetric appeals issue, persuasive. The arbitration provision at issue in Heckman v. Live Nation Ent., Inc. allowed appeals only to "the party *against whom injunctive relief* was awarded." 120 F.4th 670, 686 (9th Cir. 2024) (emphasis in original). There, the arbitration agreement allowed appeals only by "the party against whom injunctive relief was awarded," a right the court found functionally reserved for defendants because only plaintiffs typically seek injunctive relief. Id. The Ninth Circuit affirmed the district court's conclusion that such a provision was unconscionable because it "stacked the deck" in the defendant's favor and gave claimants "no recourse at all." Heckman v. Live Nation Ent., Inc., 686 F. Supp. 3d 939, 966 (C.D. Cal. 2023), aff'd, 120 F.4th 670 (9th Cir.

2024); see also Trompeter v. Ally Fin., Inc., 914 F. Supp. 2d 1067, 1075 (N.D. Cal. 2012)

("[T]he provision allowing an appeal of an award granting injunctive relief is designed to benefit

the creditor and, thus, contributes to a finding of substantive unconscionability.").  Additionally,

courts in the Ninth Circuit have also found arbitration agreements unconscionable when they

allow appeals only for threshold amounts.  See Little v. Auto Stiegler, Inc., 63 P.3d 979, 985

(Cal. 2003) (holding appeal rights limited to high-value awards generally benefit defendants);

see also Trompeter, 914 F. Supp. 2d at 1075-76 (same).

Amex asserts there is "no reason to believe" it "will always be the party facing an

injunctive relief claim."  [Dkt. 68 at 17].  But absent contrary evidence, the Court agrees that "for

all intents and purposes, claimants would be the only parties pursuing any real form of injunctive

relief."  Heckman, 686 F. Supp. 3d at 965.  This asymmetry gives Amex a meaningful second

opportunity to defend itself while denying merchants the same right.  This provision is therefore

substantively unconscionable under New York law.

However, this does not end this Court's inquiry.  As noted, New York law generally

requires both procedural and substantive unconscionability to invalidate an arbitration

agreement.  Chandler, 2022 WL 2473340 at *7.  In "exceptional cases," however, a showing of

substantive unconscionability alone may suffice if the provision is "so outrageous."  Gillman,

534 N.E.2d at 829.  Caselaw offers little guidance on what qualifies as an "exceptional case" in

New York.  See Eisen v. Venulum Ltd., 244 F. Supp. 3d 324, 342 (W.D.N.Y. 2017).  What is

clear, however, is that "minor" substantive unconscionability will not suffice to invalidate an

arbitration agreement in the absence of procedural unconscionability.  Plazza v. Airbnb, Inc., 289

F. Supp. 3d 537, 559 (S.D.N.Y. 2018) (quoting Mikhak v. Univ. of Phoenix, No. C16-00901,

2016 WL 3401763, at *13 (N.D. Cal. June 21, 2016)).  The Court therefore considers whether

Case 1:24-cv-12505-AK    Document 76    Filed 09/19/25    Page 27 of 31

the one-sided appeal provision rises to the "exceptional case" under New York law to sustain an unconscionability finding of only substantive unconscionability.  It does not.

The Second Circuit has held that even where an arbitration agreement prevents appeals of an arbitrator's decision, "not[hing would] prevent the plaintiff from moving to vacate an arbitration award in federal court pursuant to the provisions of the FAA."  Ragone, 595 F.3d at 123 (citation modified).  While a motion to vacate is procedurally demanding, it provides an additional safeguard that mitigates the potential unfairness of the provision, rendering it only slightly one-sided.  See In re Google Digit. Advert. Antitrust Litig., 763 F. Supp. 3d 563, 573 (S.D.N.Y. 2025) (applying California law) ("But a contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." (citation modified)).

Moreover, had the Agreement not been illusory, the appropriate remedy under New York law would be to sever the unconscionable appeal provision and enforce the remaining provisions. See Am. Fam. Life Assurance Co. of N.Y. v. Baker, 848 F. App'x 11, 13 (2d Cir. 2021) ("New York courts generally honor the state and federal policy favoring arbitration by severing the improper provision of the arbitration agreement, rather than voiding the entire agreement . . . ." (citation modified)).  Accordingly, this objection is overruled.

### 3.  Discovery

Lastly, Plaintiffs also object to the conclusion that the Agreement's limitations on discovery are not substantively unconscionable.  They argue the limitations are "draconian" because "Amex can defend itself by using all the documents and data it possesses, but the merchant is limited to public materials."  [Dkt. 61 at 19].

the one-sided appeal provision rises to the "exceptional case" under New York law to sustain an unconscionability finding of only substantive unconscionability.  It does not.

The Second Circuit has held that even where an arbitration agreement prevents appeals of an arbitrator's decision, "not[hing would] prevent the plaintiff from moving to vacate an arbitration award in federal court pursuant to the provisions of the FAA."  Ragone, 595 F.3d at 123 (citation modified).  While a motion to vacate is procedurally demanding, it provides an additional safeguard that mitigates the potential unfairness of the provision, rendering it only slightly one-sided.  See In re Google Digit. Advert. Antitrust Litig., 763 F. Supp. 3d 563, 573 (S.D.N.Y. 2025) (applying California law) ("But a contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." (citation modified)).

Moreover, had the Agreement not been illusory, the appropriate remedy under New York law would be to sever the unconscionable appeal provision and enforce the remaining provisions. See Am. Fam. Life Assurance Co. of N.Y. v. Baker, 848 F. App'x 11, 13 (2d Cir. 2021) ("New York courts generally honor the state and federal policy favoring arbitration by severing the improper provision of the arbitration agreement, rather than voiding the entire agreement . . . ." (citation modified)).  Accordingly, this objection is overruled.

### 3.  Discovery

Lastly, Plaintiffs also object to the conclusion that the Agreement's limitations on discovery are not substantively unconscionable.  They argue the limitations are "draconian" because "Amex can defend itself by using all the documents and data it possesses, but the merchant is limited to public materials."  [Dkt. 61 at 19].

The Supreme Court has made clear that more limited discovery in arbitration is not, by itself, a basis to invalidate an agreement. Gilmer, 500 U.S. at 30–31; see also Ciago v. Ameriquest Mortg. Co., 295 F. Supp. 2d 324, 333 (S.D.N.Y. 2003). By agreeing to arbitrate, parties trade the broader procedures and review available in court "for the simplicity, informality, and expedition of arbitration." Gilmer, 500 U.S. at 31 (citation omitted). "Discovery limitations promote the goals of the FAA, and such limitations are rarely grounds for avoiding an arbitration agreement." Hopkins v. World Acceptance Corp., 798 F. Supp. 2d 1339, 1350 (N.D. Ga. 2011) (citing Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005)). Thus, reasonable limitations on discovery in arbitration are permissible. See Moss v. Rent-A-Center, Inc., No. 06 CV 3312(SLT)(KAM), 2007 WL 2362207, at *6 (E.D.N.Y. Aug. 15, 2007) (finding arbitration agreement enforceable where it limited discovery process to one deposition). A complete waiver of discovery for all claims could be substantively unconscionable, while limited discovery is not. Paduano, 55 F. Supp. 3d at 418. The former would meet the very high "shock the conscience" standard, while the latter does not. Butnick v. Experian Info. Sols., Inc., No. 20-CV-1631 (PKC) (RLM), 2021 WL 395808, at *8 (E.D.N.Y. Feb. 4, 2021); Biller v. Am. Express Co., No. 19-CV-7173 (DLI) (PK), 2021 WL 7208647, at *5 (E.D.N.Y. Feb. 23, 2021). Courts have suggested that in certain instances a complete waiver of discovery is permissible. See Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002) (stating the "suggestion that an arbitration clause is unconscionable because discovery either is unavailable or more limited in arbitration than in litigation is preposterous"); Davis v. Crothall Healthcare, Inc., No. 22-CV-07196(PGG)(SDA), 2023 WL 6519603, at *5 (S.D.N.Y. July 7, 2023), report and recommendation adopted, No. 22-CV-7196(PGG)(SDA), 2023 WL 6237845 (S.D.N.Y. Sept. 26, 2023) (same); Bar-Ayal v. Time Warner Cable Inc., No. 03-CV-

9905 (KMW), 2006 WL 2990032, at *5 (S.D.N.Y. Oct. 16, 2006) (holding elimination of pre-hearing discovery does not render arbitration provision unconscionable).

In situations where discovery is limited, "plaintiffs bear the burden of demonstrating that the arbitration rules will in fact deprive them of a chance to prove their claims." Flores, 658 F. Supp. 3d at 218. Here, Plaintiffs have not carried their burden. Their reliance on Paduano is misplaced as that case involved a complete waiver of discovery for all claims. By contrast, claims above $100,000 here retain limited discovery rights, consistent with AAA rules for expedited cases.[1] The MOG refers claims to AAA or JAMS ("Judicial Arbitration and Mediation Services"), whose rules govern. [Dkt. 30-2 at 123]. Courts have upheld agreements incorporating such rules. As another court stated, "the Court finds no basis to conclude that the arbitration provision is substantively unconscionable simply for incorporating AAA or JAMS discovery rules that govern most arbitrations, and Plaintiffs offer no authority that warrants such a conclusion." See B & R Supermarket, Inc. v. Visa Inc., No. 17-CV-2738 (MKB), slip op. at 14 (E.D.N.Y. Aug. 14, 2024). Absent a showing by the Plaintiffs that the discovery restrictions deny them an adequate opportunity to prove their case, the Agreement's provisions are not rendered unconscionable.

Moreover, Amex's offer to allow pooled use of depositions from related arbitrations further undermines Plaintiffs' claim of deprivation. [Dkt. 45-42 at 2 ("Amex agrees that all depositions of Amex's current and former employees taken in any of the 773 individual arbitrations submitted to JAMS may be used by any Claimant in all of the pending JAMS arbitrations.")]. Plaintiffs respond to this with misdirection: Amex's past position is irrelevant to

---

[1] See Com. Arb. Rules & Mediation Proc. § E-5(b) (Am. Arb. Ass'n 2022), https://www.adr.org/media/lwanubnp/2025_commercialrules_web.pdf ("No other discovery shall be permitted except as allowed by the arbitrator for good cause shown. . . .If the arbitrator allows additional discovery, the AAA, in consultation with the arbitrator, may remove the case from the Expedited Procedures.").

a contract's unenforceability analysis. [Dkt. 61 at 19]. The Court finds it probative of the availability of discovery. The opportunity to pool depositions suggests the claimants had an opportunity to prove their claims with more robust discovery. It is also an indication of Amex's position for future arbitrations. Considering this, Plaintiffs have not carried their burden in demonstrating that the default AAA rules on limited discovery will deprive small-dollar claimants of a meaningful opportunity to prove their claims. The R&R correctly concluded that "[r]easonable limitations on discovery, however, are generally not grounds for refusing to enforce an arbitration agreement absent a showing that the lack of discovery will in fact deprive the parties of a chance to prove their claims." [Dkt. 56 at 16]. This objection is overruled.[2]

## IV.    CONCLUSION

Amex, repeatedly, has warned of the "implications for millions of merchants nationwide" with the "unprecedented conclusion" reached here. [Dkt. 62 at 1]. While mindful of these concerns, the Court is bound by precedent which demands today's conclusion. Arbitration agreements, though favored by federal policy, are placed on equal footing with other contracts and are subject to the same defenses. See AT&T Mobility LLC, 563 U.S. at 339. They must be enforced according to their terms, but not when one party unilaterally alters those terms after arbitration has been triggered. Amex asks this Court to close its eyes and rule that such actions are permissible under the "liberal federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The law requires no such result.

Under Federal Rule of Civil Procedure 72(a), when a party objects to the order of a magistrate judge on a non-dispositive matter, "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to

---

[2] As the Court found no unconscionability, the Court need not address whether the Agreement can be severed.

law." Here, Judge Boal's May 19, 2025 order is neither clearly erroneous nor contrary to law.

For the foregoing reasons, this Court **ADOPTS** the Report and Recommendation [Dkt. 56] in its

entirety, and Amex's Motion to Compel Arbitration [Dkt. 29] is **DENIED**.

      **SO ORDERED**.

Dated: September 19, 2025                    /s/ Angel Kelley          
                                                Hon. Angel Kelley
                                                  United States District Judge